FILED

U.S. DISTRICT COURT
N.D. OF ALABAMA

ENTERED

FEB 10 1999

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA   99 FEB 10  PM 3: 36
SOUTHERN DIVISION

NATIONAL MINING ASSOCIATION,

    Plaintiff,

vs.                                        CASE NO.: CV-96-J-1385-S

KENNETH APFEL, et al.,

    Defendants.

## MEMORANDUM OPINION

This court considered the following pending motions at its January 12, 1999

motion docket: Motion of Defendant Trustees of United Mine Workers of America

("UMWA") Combined Benefit Fund to Dismiss for Lack of Subject Matter Jurisdiction

(doc. 70); Plaintiffs' and Plaintiff- Interveners' Motion for Summary Judgment (doc. 58);

Motion of Defendant Trustees of UMWA Combined Benefit Fund to Dismiss Counts I

and II of the Third Amended Complaint (doc. 56); and Federal Defendant's Motion to

Dismiss (doc. 54). The court heard oral arguments at said docket. The court also had the

benefit of voluminous materials filed by the various parties including Memorandum in

Support of Plaintiffs' and Plaintiff-Interveners' Motion for Summary Judgment

("plaintiffs' memo (May 2, 1997)"); Defendant Trustees Opposition to Plaintiffs' Motion

for Summary Judgment and Reply in Support of Trustees Motion to Dismiss Counts I and

II of the Third Amended Complaint (doc. 61)("Trustees' opposition (June 27, 1997)");

Federal Defendant's Combined Reply Memorandum in Support of Motion to Dismiss and



Opposition to Motion for Summary Judgment (doc. 60)("federal defendant's memo (June

27, 1997"); Plaintiffs' and Plaintiff-Interveners' Reply to Defendants' Oppositions to

Motion for Summary Judgment (doc. 64)("plaintiffs' reply (July 21, 1997)"); Federal

Defendant's Opposition to Motion of Defendant Trustees of UMWA Combined Benefit

Fund to Dismiss for Lack of Subject Matter Jurisdiction (doc. 72)("federal defendant's

opposition (July 28, 1998)"); the Memorandum Opinion of the District Court in *The*

*Pittston Company, et al., v. United States of America*; Civil Action Number 3:97CV294

(E.D.Va. 1997); the Hon. Judge Hancock's decision in *National Coal Association v.*

*Donna E. Shalala*, CV-94-H-780-S, (N.D.Al. 1996); as well as other documents and

memoranda of law.

## I. BACKGROUND

The plaintiffs are a number of coal companies suing for a refund or offset of

overpayments of health benefit premiums paid to the defendant UMWA Combined Benefit

Fund (the "Combined Fund"); pursuant to 26 U.S.C. §§9701-9722. A historical perspective

of the case is essential to understand the Court's purpose in its ruling to follow.

> The Coal Act is the culmination of a long history of federal involvement in
> coal industry labor issues. That involvement began in 1946, when a prolonged
> coal strike occurred. The federal government took over operations of the
> nation's coal mines and entered into an agreement with the United Mine
> Workers of America ("UMWA"). That agreement ... included provisions that
> required coal producers to provide health and pension benefits to their
> workers.... Health benefits were not vested or guaranteed in these early
> agreements, and the coal producers were not obligated to the UMWA fund

beyond payment of their assigned royalties. However, the UMWA paid health benefits to miners for more than 30 years.

In 1974, the UMWA Fund was restructured in the wake of the passage of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001-1461.... For the first time, the 1974 NBCWA contained an explicit promise of lifetime health benefits. The 1974 Funds soon became financially unstable, however.... In 1989, the UMWA initiated a 10-month strike against the Pittston Coal company over retiree benefits, which was settled only with federal intervention. After the Pittston strike was settled, the Secretary of Labor appointed the Advisory Commission on United Mine Workers of America Retiree Health Benefits ... to study the problems and to propose solutions....

*In re Blue Diamond Coal*, 79 F.3d 516, 518-519 (6th Cir. 1996), *cert. denied*, 519 U.S. 1055,

117 S.Ct. 982 (1997). To solve the 1974 Funds' problems, in 1992, Congress created the

Coal Industry Retiree Health Benefit Act of 1992, 26 U.S.C. §9701 *et seq.* (the "Act" or the

"Coal Act"), as an amendment to the Internal Revenue Code. This Act creates health care

entitlements for UMWA retirees and their dependants. The Combined Fund was created by

consolidation of the 1974 Funds as a means to provide these benefits. 26 U.S.C. §§

9701(a)(5), 9702(a), 9703(f), 9704, 9705. Administration of the Combined Fund is vested

in a seven member Board of Trustees. 26 U.S.C. § 9702(b).

The Act requires the Secretary of Health and Human Services[1] to calculate a yearly

per beneficiary payment pursuant to a mathematical formula and then to assess "operators"

premiums based on the number of beneficiaries "assigned" to that operator. *See* 26 U.S.C.

---

[1]The Secretary's responsibility for calculating the premium was transferred to the Commissioner of Social Security, effective March 31, 1995, by Pub.L.No.103-296, §108(h)(9)(A), 108 Stat. 1481, 1487 (1994).

§§9704(b)(2), 9706. The operator must pay this money into the Combined Fund, which is

then overseen by the trustees of that fund ("the Trustees"). This Fund is specifically stated

to be a "multi-employer plan" within the terms of ERISA (29 U.S.C. §9702(a)(3)). Penalties,

in the nature of a tax, are provided for the failure of an operator to pay the premium on time

and as assessed by the Commissioner.

In 1994, in *National Coal Association v. Chater*, CV94-H-780-S, *aff'd* 81 F.3d 1077

(11th Cir.1996), the District Court ruled that the Commissioner of Social Security was

improperly interpreting the term "reimbursement" and hence improperly calculating the

premiums owed to the Combined Fund by the operators (plaintiffs here).[2] The court directed

the Commissioner to recompute the premiums in accordance with the criteria set forth in 26

U.S.C. §9704(b)(2).   Using the corrected figures, the plaintiffs now assert that, having

overpaid the Fund by approximately $35,000,000.00, they are entitled to either a refund or

a credit against their future obligations to the Fund.[3] These overpayments were the result of

_____

[2]This case is hereinafter referred to as the "first Alabama case". Because the trustees
were not a party to that lawsuit, the court was without the ability to order a refund. The first
Alabama case concerned the reimbursements of Medicare to the UMWA plans. In the initial
calculations, the Secretary used the actual cost of providing Medicare part B services rather than
the amount actually provided to the UMWA plans. *See* Memorandum of Decision, *National
Coal Association v. Shalala*, CV94-H-780-S (N.D. AL. June 2, 1995) at 5-6. The collective
difference in these two amounts among all of the plaintiffs is more than $35,000.000.00

[3]This dollar amount is taken from the Trustees memorandum to the "assigned operators"
dated January 10, 1997 wherein the Trustees state that at their "meeting on December 19, 1996,
the trustees of the UMWA Combined Benefit Fund considered whether to retain or return the
$35,708,838.68 premium differential resulting from the recomputation of per-beneficiary health
benefit premium for plan years beginning in 1993 and 1994 by the Commissioner of Social
Security..." *See* Exhibit 5 to plaintiffs' memo (May 2, 1997).

4

the Commissioner's improper calculations for February 1993 and October 1993 premium payments.[4]

This litigation was stayed pending the outcome of the trustees decision on whether the Combined Fund would refund the overpayment. On January 10, 1997, the trustees issued a memorandum opinion that they were not going to refund the plaintiffs' overpayments, on the basis that the return of the money would have an adverse financial effect on the Combined Fund assets. That memorandum was from the Executive Director of the Combined Fund and addressed to assigned operators of the UMWA Combined Benefit Fund (plaintiffs here). After stating its decision not to refund the overpayments, the memorandum continues, "Please be advised that the trustees' decision to retain the differential means that assigned operators remain obligated to pay in full the monthly premiums assessed. The Trustees will treat an assigned operator that takes a credit for the amount of its premium differential as delinquent in payment of premiums due." Exhibit 5 to plaintiffs' memo (May 2, 1997).

As the complaint reads in its third amended form, the plaintiffs' have four theories for the return of these payments:

---

[4] 26 U.S.C. §9706(f)(5) states that an "assigned operator shall pay the premium under section 9704 pending review by the Commissioner of Social Security or by a court." Under 26 U.S.C. §9707, a penalty of $100.00 per day per beneficiary is assessed for failure to pay any premium as required under section 9704. The court notes that most of the plaintiff operators have been assigned several thousand beneficiaries.

**Count I**: Claim against the Commissioner for a refund of overpayments under 26 U.S.C. §9706(f)(3). The plaintiffs argue that the Commissioner is in violation of this section of the Coal Act by either not ordering the Combined Fund to refund the overpayments or by not applying the overpayment to the plaintiffs' respective future premiums.

**Count II**: Claim for restitution under the federal common law of ERISA (although plaintiffs' alternately represent this count as being pursuant to an implied cause of action under ERISA §403(c)(2)(A)(ii) (29 U.S.C. §1103(c)) and a claim for return of overpayment in accordance with §403(c)(2)(A)(ii) of ERISA. *See* third amended complaint, Count II, filed February 10, 1997.

**Count III**: Equitable claim for relief; a claim for common law restitution under the Coal Act. *See* plaintiffs' reply, July 21, 1997, at 11-12.

**Count IV**: Claim under 26 U.S.C. § 9721 that the Combined Fund has to return the premiums or credit the overpayments against future premiums.

*See* plaintiffs' memo (May 2, 1997) at 2; federal defendant's memo (March 21, 1997) at 16.[5]

---

[5]The Court notes that several pleadings also refer to this count as being brought under §4221 of ERISA, as a claim for adjustments of overpayments. Really, the plaintiffs argue these two sections in conjunction with one another, basing the claim for credit against future premiums or refunds under 26 U.S.C. §9721. §4221 of ERISA provides for the adjustment of overpayments or under payments once that final, correct amount is established. *See* third amended complaint, count IV.

6

## II. TRUSTEES MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION

In reliance on the Virginia case, *Pittston v. United States*, the trustees state that this

court does not have subject matter jurisdiction. Pittston was originally a plaintiff in this case

pending before this court, but dismissed its claims here to bring the Virginia action. Pittston

sued the United States under the Internal Revenue Code, which resulted in an award of $1.9

million against the United States. In that case, the United States sued the trustees as a third

party. That court held that the premiums due under the Coal Act are taxes and therefore

refundable. *See* memorandum opinion, *Pittston*, 3:97CV294 (E.D.Va.1997). Based on this,

the trustees here argue that the plaintiffs have not followed the provisions of 26 U.S.C. §7422

which requires claims for refunds to be filed with the Secretary before any civil court action

may be brought.

This court finds that a ruling that this court lacks subject matter jurisdiction over this

action would necessarily entail a finding that the Hon. James Hancock was also without

jurisdiction to find that the premiums, as a tax, were inappropriately calculated. As the first

Alabama case was affirmed by the Eleventh Circuit Court of Appeals, this court specifically

rejects the notion that the court in the first Alabama case was without jurisdiction.[6]

---

[6]*See National Coal Association v. Chater*, 81 F.3d 1077, 1080 (11th Cir.1996). Of interest is that while the Virginia District Court reached a different decision in the *Pittston* case from this court, that court likewise rejected trustees' argument that the Alabama District Court lacked subject matter jurisdiction to render its decision in the first Alabama case. *See* Memorandum Opinion, September 9, 1998, *Pittston Company v. U.S.*, 3:97CV294 (E.D.Va.) at 7-8. Clearly, the *Pittston* court was concerned that "it would certainly be unconscionable for the Trustees to retain the significant total of nearly two million dollars that it was never supposed to have." *Id.*

7

Furthermore, this court does not believe that this case is a "tax refund" suit. While the premiums the plaintiffs have paid may be in the nature of taxes, they are not taxes. *See* federal defendant's opposition ( July 27, 1998), at 2. Especially telling of this fact is that for complete relief in a tax refund action, the suit must be brought against the United States. Here, the United States is not a party to this action, never received any of the funds at issue in this action, nor is it needed for complete relief in this action. The term tax has been defined as a "pecuniary burden laid upon individuals or property for the purpose of supporting the Government. *United States v. Reorganized CF & IF Fabricators*, 518 U.S. 213, 116 S.Ct. 2106, 2113 (1996).

The Supreme Court has recently stated:

> On the other hand, in a case such as this one, it cannot be said that monetary relief against the Government is an available remedy .... The payments mandated by the Coal Act, although calculated by a Government agency, are paid to the privately operated Combined Fund. Congress could not have contemplated that the Treasury would compensate coal operators for their liability under the Act....

*Eastern Enterprises v. Apfel*, – U.S. –, 118 S.Ct. 2131, 2145 (1998). Thus, while the Trustees assert under numerous cases that 26 U.S.C. §7422 is the exclusive means by which to recover tax overpayments, this court does not find this section of the Internal Revenue Code to be appropriate authority in the facts before this case. The defendant Trustees' motion to dismiss for lack of subject matter jurisdiction is therefore **DENIED.**

_____

at 14, n. 11.

8

### III. THE PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). As the Supreme Court has explained the summary judgment standard:

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be no genuine issue as to any material fact, since the complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial.

*Celotex Corp.,* 477 U.S. at 322-23. The party asking for summary judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the pleadings or filings which it believes demonstrates the absence of a genuine issue of material fact. *Id.* at 323. The burden then shifts to the nonmoving party to "go beyond the pleadings and by ... affidavits, or by the 'depositions, answers to interrogatories, and admissions on file' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324, Fed. R. Civ. Pro 56(e). In meeting this burden the nonmoving party "must do more than simply show that there is a metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S.

9

574, 586 (1986).  That party must demonstrate that there is a "genuine issue for trial."

Fed.R.Civ.P. 56(c); *Matsushita*, 475 U.S. at 587, *see also Anderson v. Liberty Lobby*, 477

U.S. 242, 249 (1986).  The non-movant must "demonstrate that there is indeed a material

issue of fact precluding summary judgment." *Clark v.  Clark & Coats, Inc.*, 929 F.2d 604,

608 (11th Cir.1991).

On motions for summary judgment, the court is to construe the evidence and factual

inferences arising therefrom in the light most favorable to the nonmoving party.  See *Adickes*

*v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970).  The substantive law will identify which facts

are material and which are irrelevant.  *Anderson ,*  477 U.S. at 248.  All "reasonable doubts"

about the facts and all justifiable inferences are resolved in favor of the non-movant.

*Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993).  However, all "doubts"

need not be so resolved. *Barnes v. Southwest Forest Industries, Inc.,*  814 F.2d 607, 609 (11th

Cir. 1987).

A dispute is genuine "if the evidence is such that a reasonable jury could return a

verdict for the nonmoving party."  *Anderson*, 477 U.S. at 248.  If the evidence is merely

colorable, or is not significantly probative, summary judgment may be granted. *Id*. at 249.

The basic issue before the court on a motion for summary judgment is "whether the evidence

presents a sufficient disagreement to require submission to a jury or whether it is so one-

sided that one party must prevail as a matter of law."  *Holcombe v. Alabama Dry Dock &*

*Shipbuilding*, 1998 WL 758012 (S.D.Ala.); citing *Anderson*, 477 U.S. at 251-252.

10

In the case before this court, no factual dispute exists.  Instead, the parties are in

disagreement as to what law should be applied to these facts and what the outcome of this

application of law should be.  The essential agreed upon facts of this case are that the

Trustees of the Combined Fund collected the plaintiffs' overpaid premium and still have

complete control over this money.  Furthermore, the parties agree that this amount is

approximately $35,000,000.00.

## A. 26 U.S.C. SECTION 9721

The plaintiffs argue that under 26 U.S.C. §9721 of the Coal Act, they are entitled to

a refund.  This section of the Coal Act states that:

> The provisions of section 4301 of the Employee Retirement Income Security
> Act of 1974 shall apply to any claim arising out of an obligation to pay any
> amount required to be paid by this chapter in the same manner as any claim
> arising out of an obligation to pay withdrawal liability under subtitle E of title
> IV of such Act.

26 U.S.C. §9721.  §4301 of ERISA states that a plan fiduciary, employer, plan participant,

or beneficiary, who is adversely affected by the act or omission of any party under this

subtitle with respect to a multi-employer plan ... may bring an action for appropriate relief

or equitable relief, or both.  29 U.S.C. §4301(a)(1) (29 U.S.C. section 1451(a)(1)).  However,

after carefully reviewing §9721 and §4301 in conjunction with each other,  the court cannot

find any set of facts where these two sections have been applied to create a cause of action

in a case not involving withdrawal liability.

11

Plaintiffs argue that the Coal Act is "replete with evidence that Congress intended assigned operators to pay only amounts directly related to their assigned beneficiaries, and that overpayments be returned to the operators." Plaintiffs' memo (May 2, 1997), at 11. This argument of the plaintiffs is rather convoluted, but essentially seems to be that section 9721 of the Coal Act incorporated section 4301 of ERISA, as amended by the MPPAA, and that this section (MPPAA §4301) applies only to MPPAA withdrawal liability. From this, plaintiffs reach the conclusion that employers may bring a case for relief against a multi-employer plan. While that may be the case, section 4301 has only been used to address employer withdrawal liability and not overpayments due to miscalculation by the Commissioner. As such, the court finds this argument to be unconvincing as a basis for granting the relief plaintiffs' request. However, 26 U.S.C. §9721, with its reference to ERISA §4301 does create a strong presumption that Congress intended employers to have some equitable rights under the Coal Act. Certainly at least, it gives credence to the plaintiffs argument that Congress did not intend for the Trustees to be able to retain improperly calculated premium payments.

Specific evidence of Congress' intent for operators to pay only the amount they owe is found in section 9721, concerning withdrawal liability, and 26 U.S.C. section 9706(f)(3)(A)(i), concerning the misassignment of a beneficiary to a particular operator. Section 9706(f) clearly provides for a credit or refund in this situation. Adding credence to the plaintiffs' arguments and calling into question the Trustees' interpretation that they have

12

no obligation to refund the overpayments is 26 U.S.C. section 9704(e)(3)(A).[7] That section states that the premiums shall be adjusted on an annual basis to return account surpluses to assigned operators. Specifically, that section allows a reduction in the amount of premiums due from each operator by the amount of the surplus. However, as stated above, the court finds that §4301 is not the vehicle for repayment or credit for overpayments that plaintiffs wish it to be.

## B. SECTION 9706(f) and FEDERAL DEFENDANT'S MOTION TO DISMISS

### THE SAME

The court also finds that although plaintiffs claim a refund due from the Commissioner under 26 U.S.C. section 9706(f), that section is much too narrow for the interpretation plaintiffs wish to give it. That section states that it only applies when a beneficiary is assigned to the wrong operator. The court declines to find an implied cause of action under 26 U.S.C. section 9706(f).[8] However, plaintiffs are correct in their assertion

---

[7]The Trustees' argument is that under ERISA section 403(c)(2)(A)(ii), the Trustees may return premiums paid through mistake of law or fact, but that they have the discretion to decide whether to return the overpayments. According to the Trustees' interpretation, this section is solely permissive, thus no implied cause of action under that section exists and thus plaintiffs have no cause of action under this section. The Trustees' argument is based in part upon *Dime Coal Co. v. Combs*, 796 F.2d 394 (11th Cir.1986), in which the court states that "the District Court erred in refusing to dismiss [plaintiffs'] complaint for failure to state a claim upon which relief could be granted."). This case is discussed at length, *infra*.

[8]This is the only count of plaintiffs' third amended complaint which names this defendant and thus, the Commissioner's federal defendant's motion to dismiss focuses solely on whether relief is available to the plaintiffs under this count. The court finds no merit to the plaintiffs argument that Congress granted the Commissioner the implied authority to notify the Trustees that they must refund these overpayments. *See* plaintiffs' memo (May 2, 1997), at 5. The plaintiffs apparently ask this court to order the Commissioner to tell the Trustees to refund the

13

that it manifests Congress' intent that the Combined Fund not retain overpaid premiums. *See* plaintiffs' memo (May 2, 1997) at 4; plaintiff's reply (July 21, 1997) at 18.[9]

The federal defendant filed a motion to dismiss this count of plaintiffs' third amended complaint on the 12(b)(6), F.R.C.P., grounds it fails to state a claim upon which relief can be granted. *See* federal defendant's motion to dismiss and memorandum in support thereof (March 21, 1997).   Federal involvement in the administration of the Combined Fund is restricted to two areas. The Coal Act required the Commissioner to assign beneficiaries to operators and then to notify the Combined Fund and the operator of the resulting assignments. 26 U.S.C. §9706(a) and (e)(1) & (2).[10] Additionally, as previously discussed, the Commissioner is also responsible for calculating the pre-beneficiary yearly premium. 26 U.S.C. §§9704(b)(2) and (f). These are the only two obligations the Commissioner has under the Coal Act. The Commissioner does not collect, disperse or maintain any funds under the Act.

---

plaintiffs' overpayments. Even assuming the court granted this request by plaintiffs, this court can find no legal basis to then make the Trustees comply with the Commissioners' notification that the Trustees should refund the money. Considering that the Trustees are a party to this action, an order directed to the Commissioner seems superfluous.

[9]For example, plaintiffs state that §9706(f) reflects the Congressional intent that overpaid premiums be returned. "In that section of the Coal Act, by allowing assigned operators to challenge even a single misassigned beneficiary, Congress demonstrated that it would not countenance an overcharge to operators of even $975...." Plaintiffs' reply (July 21, 1997), at 18.

[10]The Act actually requires assignment of beneficiaries to the "last signatory employer" according to a statutory assignment hierarchy. *See* 26 U.S.C. §9706(a). For purposes of this motion, last signatory employer shall be referred to either "plaintiffs" or "operators".

Because of the nature of the Commissioner's responsibility in assigning beneficiaries to operators, section 9706(f) of the Act, allowing suit for misassignment was a logical inclusion for Congress to make. However, Congress allowing a means for an operator to sue for a reassignment of a beneficiary in no way implies a right of action to have a court order the Commissioner to order the Trustees to refund money resulting from the Commissioner's interpretation of the term "reimbursement" as such term implies to Medicare payments.

The plaintiffs also state this argument as being that the Commissioner should reduce future premiums by the amount of overpayments already in the possession of the Combined Fund. *See* Third Amended Complaint at ¶¶31, 32. However, no authority exists for the Commissioner to administer justice and equity as the Commissioner sees fit. *See Louisiana Public Service Comm'n v. F.C.C.*, 476 U.S. 355, 374, 106 S.Ct. 1890 (1986)("an agency literally has no power to act ... unless and until Congress confers power on it"); *Killip v. Office of Personnel Management*, 991 F.2d 1564, 1569 (Fed. Cir. 1993)("Any and all authority pursuant to which an agency may act ultimately must be grounded in an express grant from Congress"). This court cannot glean an implied grant of authority from Congress to the Commissioner that he or she has the power to reduce premiums due from operators to the Combined Fund to correct past injustices. This interpretation would actually make the express provisions of §9706(f), concerning misassignments, redundant.[11]   As the

---

[11]If the Commissioner had the power to correct past unfairnesses from any source, no need would have existed for Congress to create an explicit means to correct the particular injustice resulting from a misassignment.

15

Commissioner points out, §9706(f)(3) explicitly states that the Commissioner shall notify the Trustees of the Combined Fund of the misassignment and the Trustees shall reduce the premiums accordingly.   Federal defendant's memo (June 27, 1997), at 3.   The Coal Act states that any subsequent readjustment is the responsibility of the Trustees.   26 U.S.C. §9706(f)(3)(A)(i). Nowhere does a plain reading of this section provide authority for the Commissioner to order the Trustees to refund premiums to operators.   "If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress."   *Chevron, U.S.A. v. Natural Resource Defense Council*, 467 U.S. 837, 842-43, 104 S.Ct. 2778 (1984).

Count I of plaintiffs' third amended complaint fails to state a claim upon which relief can be granted.  It is therefore **ORDERED** by the Court that the federal defendant's motion to dismiss Count I of the third amended complaint be and hereby is **GRANTED**.   It is therefore **FOUND** by the Court that the plaintiffs' motion for summary judgment is **MOOT** as to the federal defendant.   On this count of the complaint, it is **ORDERED, ADJUDGED** and **DECREED** that judgment is hereby entered in favor of the defendant, Commissioner of Social Security.

### C. FEDERAL COMMON LAW UNDER ERISA OR THE COAL ACT

The plaintiffs advance two separate common law theories of restitution, one in Count II under the federal common law of ERISA, the other in Count III under the federal common law of the Coal Act.  *See* plaintiffs' reply (July 21, 1997) at 12.  The plaintiffs' argue that a

16

majority of the circuits have found that a cause of action under the federal common law of

ERISA for a return of overpayments exists. This court finds from a review of the law of

other circuits that, after stating no implied cause of action exists under ERISA section

403(c)(2)(A)(ii), the courts seem to all agree that Congress intended the circuits to create a

common law cause of action for restitution, as a means to fill in gaps left by Congress in

creating ERISA.[12] *See e.g. Jamail v. Carpenters Dist. Council*, 954 F.2d 299, 303 (5th cir.

1992)(stating that a remedy is available under federal common law); *Plucinski v. District

#15*, 875 F.2d 1052, 1053 (3rd Cir.1989)("we hold that an employer may recover such funds

when the court finds it equitable..."); *UIU Severance Pay Trust Fund v. Local Union No. 18-

U*, 998 F.2d 509, 512 (7th Cir. 1993)(finding that "the employer may seek recovery of a

disputed sum as a matter of federal common law" and further stating that "the creation of a

federal common law is appropriate when, as here, it is necessary to 'effectuate the statutory

---

[12]This court does agree with the Trustees that no implied cause of action exists under §403(c)(2)(A). Applying the factors for an implied cause of action from *Cort v. Ash*, 422 U.S. 66, 78, 95 S.Ct. 2080 (1975), this court immediately notes that the first factor, whether the plaintiffs are one of the class for whose benefit the statute was created, must be answered negatively. The plaintiffs here are not the group which Congress sought to benefit by ERISA or by the Coal Act. Rather, both statutes were enacted to protect employees. The plaintiffs recognize that most courts have concluded that Congress did not intend to create an implied cause of action for a refund under ERISA. Memorandum in support of plaintiffs' motion for summary judgment at 26. However, because of this court's ruling on the plaintiffs' theory of a federal common law right of restitution, the court need not determine whether the plaintiffs here can satisfy all four, or even the first of the *Cort v. Ash* factors.

Similarly, this court need not revisit the numerous court rulings on the lack of a cause of action being implied under ERISA §403(c), for the same reason that this court's ruling on Count III of the plaintiffs' complaint makes this entire argument of plaintiffs' and indeed, defendant Trustees' motion to dismiss counts I and II of the third amended complaint, moot.

17

pattern enacted in the large by Congress' (citations omitted)"; *Whitworth Bros. Storage Co., v. Central States*, 794 F.2d 221, 236 (6ᵗʰ cir.), *cert denied*, 479 U.S. 1007, 107n S.Ct. 645 (1986)(stating that a federal common law action exists for employers to recover contributions).

In the particular context of ERISA, the Supreme Court has stated that "a body of federal substantive law will be developed by the courts ..." *Franchise Tax Board v. Construction Laborers*, 463 U.S. 1, 24 n. 26, 103 S.Ct. 2841, 2854 n. 26 (1983); cited in *UIU Severance Pay Trust Fund*, 998 F.2d at 512, 513 ("absent a judicially crafted cause of action, employers are left to the mercy of plan Trustees who have no financial incentive to return mistaken payments .... If they are not permitted to seek recovery of mistaken contributions they may be less inclined to sponsor ERISA-qualified plans .... This would undermine ERISA's goal of expanding pension and welfare benefit plan coverage"). As the Seventh Circuit explained, "[t]his receptiveness to federal common law notwithstanding the comprehensive character of ERISA is the product of ERISA's broad preemption provision. Ordinarily, parties are not insulated from state causes of action simply because the activity in which they are engaged is subject to federal regulation. But ERISA provides, with certain exceptions, none of which are material here, that it 'shall supercede any and all State laws insofar as they may ... relate to any employee benefit plan....'(internal citations and footnotes omitted)." *UIU Severance Pay Trust Fund*, 998 F.2d at 512, citing 29 U.S.C. §1144.

18

The Eleventh Circuit has not addressed this issue since Congress passed the Coal Act in 1992. However, the Eleventh Circuit did affirm the Hon. James Hancock in the first Alabama case, which on its face anticipates the return of the plaintiffs' overpaid premiums. That case states that the Commissioner of Social Security shall recompute the initial premium and all subsequent premiums in accordance with section 9704(b)(2) of the Coal Act and shall notify the Combined Fund of the premium amount that the Fund should have assessed assigned operators for the disputed plan years. *National Coal Association v. Chater*, 1995 WL 1052240 (N.D.Al.1995); *aff'd* 81 F.3d 1077 (11th Cir.1996). Clearly, the Eleventh Circuit, in affirming the District Court, was aware that Judge Hancock ordered the overpayment computed. The only logical reason for such a computation would be for refund or credit purposes. Furthermore, this court finds that at least the First, Third, Fourth, Fifth, Sixth and Seventh Circuits have all found a common law cause of action for restitution under ERISA. *Kwatcher v. Massachusetts Service Employees Pension Trust*, 879 F.2d 957, 965-67 (1st Cir.1989); *Plucinski*, 875 F.2d at 1056-58, *Provident Life & Accident Ins. Co. v. Waller*, 906 F.2d 985, 990 (4th Cir.), *cert. denied*, 498 U.S. 982, 115 S.Ct. 512 (1990); *Jamail*, 954 F.2d at 301, *Whitworth Bros. Storage Co.*, 794 F.2d at 236; *UIU Severance Pay Trust Fund*, 998 F.2d at 512.

The Eleventh Circuit has addressed the issue of the existence of a federal common law right of action for the refund of overpayments on at least one occasion, that being *Dime Coal v. Combs*, 796 F.2d 394 (11th Cir.1986). The plaintiffs' argue that *Dime Coal* does not apply

to the facts before this court, as that case involved the question of voluntary contributions. In *Dime*, the Eleventh Circuit states that "no federal common law right of recovery of the disputed contributions at issue in this case exists." 796 F.2d at 399, n.7.[13] The Court did not state, as Trustees seem to hint, that the Eleventh Circuit was holding that no federal common law right of action ever exists. Furthermore, as the Court in *Dime* noted, the issue of a federal common law was not before the court. This court also notes that because the *Dime* opinion predates the Coal Act by six years, the payments of the type in dispute here could not have been considered by the Eleventh Circuit in that case. The case before this court is easily distinguishable from the facts and circumstances of *Dime*.

Here, the Trustees apparently agree with the plaintiffs that the federal common law under ERISA provides a claim for restitution. Trustees' opposition (June 27, 1997), at 18. Adding further support to the plaintiffs' argument that the federal common law of restitution mandates a refund or credit in the facts before this court is the Eleventh Circuit's recognition that restitution is an equitable remedy to unjust enrichment. *See e.g. Waldrop v. Southern Company Services, Inc.*, 24 F.3d 152 (11th Cir.1994), *cert. denied*, 116 S.Ct. 77 (1995). The plaintiffs argue that compulsory and involuntary payments exacted under an error of law must be returned, citing to *Democratic Central Committee of D.C. v. Washington*

---

[13]The disputed contributions there resulted from a mistake in calculating the coal tonnage actually produced. "*Dime* did not deny restitution of overpayments in all circumstances." *Operating Engineers Local 312 Health & Welfare Fund v. Rivers & Roads, Inc.*, 813 F.Supp. 791, 796 (N.D.Ala.1993).

20

*Metropolitan Area Transit Committee*, 485 F.2d 786 (D.C.Cir.1973), *cert denied*, 415 U.S. 935, 94 S.Ct. 1451 (1974); *accord Williams v. Washington Metro. Area transit Comm'n,* 415 F.2d 922, 942 n. 97 (D.C.Cir.1968), *cert. denied*, 393 U.S.1081 (1969), cited with approval in *U.S. v. Barnette*, 10 F.3d 1553 (11th Cir.), *cert denied*, 115 S.Ct. 74 (1994).

While this court agrees with the Trustees that ERISA §403(c) does not create an implied cause of action for the refund of the plaintiffs' overpayments, nothing in that section precludes a refund either.[14] That section merely states that where a payment is made by mistake of law or fact, nothing in that paragraph prevents the return of such contributions within six months after the plan administrator determines that the contributions were made by mistake. *See* ERISA §403(c)(2)(A)(ii), 29 U.S.C. §1103(c)(2)(A)(ii). The permissiveness of this section does not prevent this Court from ordering a refund of premiums wrongly paid, but rather demonstrates Congress' intent to maintain equities in the application of ERISA.[15]

---

[14]*See Jamail,* 875 F.2d at 1057 ("The existence of section 403 shows that Congress reached a consensus that pension funds should be allowed to return such contributions; but it does not demonstrate any consensus by Congress against judicial recognition of a common law action allowing employers to sue for equitable restitution").

[15]The Trustees argue that the language of §403(c) is merely permissive and does not require any action on the part of the Trustees. Because this section states that it "does not prohibit the return of such contribution or payment to the employer..." the court here must agree with Trustees that under this particular section, the court cannot force the Trustees to return plaintiffs' overpayments. *See* Trustees' memo (March 21, 1997), at 17.

However, "[a]bsent a judicially-crafted cause of action, employers are left to the mercy of plan trustees who have no financial incentive to return mistaken payments." *UIU Severance Pay Trust Fund*, 998 F.2d at 513.

21

In actions for restitution under ERISA, courts are required to conduct a detailed analysis to determine whether equity requires the return of mandatory overpayments. *See e.g. Kwatcher*, 879 F.2d at 965-67. The determination of whether a common law right of action is necessitated by theories of equity is determined by applying factors such as: 1) Whether the overpayments are the type of mistaken payment that equity would require to be refunded; 2) Whether the employer has delayed in bringing the action for refund to the point where the delay is an equitable defense to the refund; 3) Whether the employer has ratified the overpayments by continuing to pay them for a long period of time; and 4) Whether restitution would result in the underfunding of the plan. *See UIU Severance Pay Trust Fund*, 998 F.2d at 513, *Plucinski*, 875 F.2d at 1058.

In applying these principles, the court finds that each one favors a refund of the disputed sum to the plaintiffs. Clearly, the plaintiffs made the overpayments through no fault or mistake of their own, they have been diligent and consistent in trying for almost five years now to obtain a refund of these sums and the plaintiffs ceased making the overpayments as soon as they were legally entitled to do so. Whether the restitution will result in the underfunding of the plan shall be discussed below as some dispute does exist as to the financial stability of the plan and the current fund management of the Trustees.[16] Suffice it to note here that the plaintiffs allege that the overpayments did not cause the Trustees to

---

[16]The plaintiffs claim that the Combined Fund has a huge surplus, the Trustees claimed at the motion docket hearing that they will be broke by July of 1999. As discussed *infra*, due to the structure of legal requirements upon the Trustees, this is not the court's concern.

provide greater benefits than it would have otherwise. Plaintiffs' memo (May 2, 1997), at 23, citing to Trustees' memorandum of November 21, 1996, submitted as Exhibit 9 to plaintiffs' memo.

Before awarding the refund of the overpaid premiums, this court must consider the Trustees' position that the refund of the disputed amount would hasten the Combined Fund's insolvency. The Trustees stated in January 1997 that refunding the overpayments would "hasten by nearly two years the date by which the Combined Fund incurs a net asset deficit. Mr. King's actuarial projections reveal that, with retention of the differential, Fund liabilities will exceed Fund assets in June 2002. An immediate refund of the differential would advance that date to August 2000...." *See* memorandum of January 10, 1997, Exhibit 5 to plaintiffs' memo (May 2, 1997). Based on this, the court notes that regardless of whether it orders a refund, the Combined Fund claims it will face a net asset deficit less than ten years after its creation.[17]

The Financial Statement submitted as Exhibit 6 to the plaintiffs' memo (May 2, 1997) demonstrates that the Combined Fund's assets actually grew by five million dollars between September 30, 1995 and September 30, 1996. A February 1997 financial statement lists the Fund's net assets at $102,350,000.00. *See* Exhibit 6 to the plaintiffs' memo (May 2, 1997).

---

[17]This court finds that the term "net asset deficit" means "loss" or "insolvency" and that the "premium differential" referred to in the memorandum translates to "the plaintiffs' overpayments." While the same memorandum also speaks of the return of $35,708,838.68 "premium differential" as having a "significant adverse effect on the financial position of the Combined Fund" this court notes that refunding money always involves an "adverse financial effect" on the source from which the refund emanates.

Furthermore, in an earlier memorandum, the Trustees clearly stated their position that they would not have recommended managing benefits differently had they known the premiums would be decreased as a result of the first Alabama suit, they would not have adopted different benefit levels and terms, and they would not have changed their investment strategy. Exhibit 9 to plaintiffs' memo (May 2, 1997). Most convincing to this court that any possible insolvency of the Combined Fund is not a consideration for the plaintiffs or this court is the Coal Act itself. The Coal Act states:

> The Trustees of the Combined Fund shall negotiate payment rates with the health care services plans described in paragraph (1) for each plan year which ... result in aggregate payments for such plan year from the Combined Fund which do not exceed the total premium payments required to be paid to the Combined Fund under section 9704(a) for the plan year, adjusted as provided in subparagraphs (B) and (C).

26 U.S.C. §9703(b)(2)(A). At the hearing held on the pending motions, the Trustees took the position that refunding the plaintiffs overpayments would hasten the Fund's insolvency, not cause it. In light of the above-quoted section of the Coal Act, the Trustees are apparently not complying with the law. If the Trustees were properly providing benefits at a level which did not exceed the total premium payments, as the law requires, a future insolvency would not arise. Thus, the court finds no basis for the Trustees' argument that a hastened insolvency will result.

In consideration of all of the above, the court hereby **ORDERS** that the plaintiffs' motion for summary judgment be and hereby is **GRANTED** as to count III of the plaintiffs'

24

third amended complaint. Having found that the plaintiffs are entitled to a refund of the

overpayment, it is further **ORDERED** by the court that the Trustees shall refund to each of

the plaintiffs each plaintiff's overpayment contributing to the full amount of $35,708,838.68.

Said payment is to be made within thirty (30) days of today's date and shall be accompanied

by an accounting that sets forth the basis for the Trustees' calculation of the amount paid to

each of the plaintiffs. However, because this court can find no authority for the allowance

of interest within the Coal Act, the court is of the opinion that plaintiffs request for interest

should be denied and therefore **ORDERS** that the same be and hereby is **DENIED**.[18]

## IV.  TRUSTEES' MOTION TO DISMISS COUNTS I AND II OF THE THIRD AMENDED COMPLAINT

The court is of the opinion that this motion has been rendered moot by the court's

ruling on the plaintiffs' motion for summary judgment and the federal defendant's motion

to dismiss. It is therefore **FOUND** by the court that the motion of defendant Trustees to

dismiss counts I and II of the complaint (doc. 56) be and hereby is **MOOT**.

---

[18]While the plaintiffs cite some authority for their proposition that they are entitled to interest, the court finds that this authority is all based on employer withdrawal liability, a basis for the refund that the court has already specifically rejected. (Plaintiffs' reply (July 21, 1997), at 20-22.) The plaintiffs further argue that the Internal Revenue Code requires that interest be allowed. 26 U.S.C. section 6611. However, this court has ordered the refund based on the federal common law theory of restitution. The plaintiffs have provided this court no authority for the proposition that under this theory, they are entitled to interest on this wrongfully paid amount.

Additionally, while the Court does not feel bound by Trustees' argument that the Combined Fund is rapidly approaching insolvency, the court notes that the Trustees state, and plaintiffs agree, that the Trustees did not change any investment strategy because of the additional $35,000,000.00 in premiums.

25

The court finding that no issues remain for resolution, and finding no just cause for delay, the court does **ORDER, ADJUDGE** and **DECREE** that judgment is hereby rendered as stated above in favor of the plaintiffs and against the defendant Trustees on count III of the plaintiffs' complaint.  Counts II and IV are hereby **DISMISSED** with prejudice.

**DONE** and **ORDERED** this the _____10_____ day of February, 1999.


INGE P. JOHNSON
UNITED STATES DISTRICT JUDGE

26